UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| VANESSA JUSTINIANO,<br><br>           Plaintiff,<br><br>v.<br><br>PHALANX ENGINEERING, INC. and MICHAEL DRUMMOND,<br><br>           Defendants. | Civil Action No. 1:20-cv-00187<br><br>**Jury Trial Demanded** |

## COMPLAINT

### Introduction

Plaintiff Vanessa Justiniano ("Ms. Justiniano"), through her undersigned counsel, hereby brings this Complaint against her former employer Phalanx Engineering, Inc. ("Phalanx") and its owner Michael Drummond ("Mr. Drummond," collectively, "Defendants") based upon Defendants' discriminatory, intentional, and willful failure to pay her overtime wages and retaliatory termination when she complained.[1]

For sixteen years, through January of 2020, Ms. Justiniano worked as an Assistant Office Manager and Office Manager for Phalanx and her primary duties included bookkeeping, general office work, accounts receivable, and human resources clerical duties. Throughout her employment, Defendants classified Ms. Justiniano as a non-exempt employee and paid her on an hourly basis. At no time did Defendants pay Ms. Justiniano on a salary basis. At various times throughout her employment with Defendants, Ms. Justiniano worked well in excess of forty

---

[1] Phalanx also discriminated against Ms. Justiniano on the basis of her gender and terminated her when she complained about this discrimination. Certain claims related to that issue are currently pending before the Rhode Island Commission for Human Rights and will be added to this Complaint as soon as practicable.

hours per week without ever receiving any additional wages beyond her hourly rate for forty hours.

On January 6, 2020, Ms. Justiniano complained to her boss and the owner of Phalanx, Mr. Drummond, about his failure to pay her overtime wages and the fact that Defendants were paying a similarly-situated male co-worker overtime wages.  Mr. Drummond became very angry and told Ms. Justiniano she should seek "help."  Due to the stress of working long hours against her wishes and without any additional pay and the aggressive way Mr. Drummond reacted to her complaint, Ms. Justiniano visited her primary care physician the following day and submitted a doctor's note indicating she could not work for a short period of time. Mr. Drummond responded by refusing to answer or return her calls, changing all of Ms. Justiniano's passwords (including her email password), and, ultimately, terminating her.

As a result of Defendants' unlawful conduct, Ms. Justiniano has suffered severe emotional distress, lost overtime wages, lost back wages and benefits, and lost front wages and benefits.  In support of this complaint, Ms. Justiniano avers as follows:

**Parties**

1. Ms. Justiniano is a citizen of Rhode Island and resides at 21 Walker Lane, Coventry, RI.

2. Phalanx is a corporation organized under the laws of the State of Rhode Island with a principal place of business located at 110 Byfield Street, Warwick, RI.

3. Mr. Drummond is a citizen of, and resides in, Rhode Island.

**Jurisdiction and Venue**

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1367, and 29 U.S.C. § 216(b).

5.    Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

## Facts

6.    Defendants hired Ms. Justiniano in 2004 as an Assistant Office Manager.

7.    For more than the last three years, Ms. Justiniano served as Office Manager for Phalanx.

8.    During more than the last three years, Ms. Justiniano's job duties included the following:

- Billing for contract and time and material jobs
- Creating and delivering invoices
- Prevailing wage reporting
- Processing payroll payments
- Filing for employee personnel files
- Conducting employee onboarding
- Administering employee benefit plans
- Managing apprentice contracts and schooling
- Month and year-end closing clerical accounting duties
- Reconciling bank accounts and general ledger
- Preparing journal entries
- Filing payroll tax returns

9.    At all relevant times, Ms. Justiniano was paid on an hourly basis as a non-exempt non-salaried employee.

10.   Ms. Justiniano regularly worked in excess of forty hours per week. In fact, from October through March, Ms. Justiniano frequently worked in excess of sixty hours per week. Despite the fact that she was an hourly wage employee, she was never paid any wages for hours worked above forty including wages at the overtime rate of pay.

11.   Ms. Justiniano does not qualify under state or federal law under any of the relevant exemptions as a salaried administrative, executive, or professional employee such that she was not entitled to overtime wages.

12. Ms. Justiniano did not exercise discretion or independent judgment with respect to matters of significance and, instead, was required to obtain management approval for any non-routine decisions.

13. Ms. Justiniano did not supervise or direct the work of two or more employees and was not involved in management of Phalanx or a department or subdivision of Phalanx.

14. Ms. Justiniano did not have authority to hire, fire, promote, or advance employees and never gave, or was asked, her suggestions or recommendation regarding such matters.

15. Ms. Justiniano's primary duties were general office management, bookkeeping, and accounts receivable and did not include work requiring advanced knowledge.

16. Ms. Justiniano was never paid a salary.

17. Ms. Justiniano was paid on an hourly basis that changed depending upon the quantity (number of hours) of work performed.

18. If Ms. Justiniano was sick for a full day or more, she was forced to use PTO or, if none was available, she would receive no wages for those days.

19. The above is Defendants' established "actual practice" and not a mere isolated or inadvertent deduction from wages.

20. On January 6, 2020, Ms. Justiniano met with Mr. Drummond to discuss some issues she was having at work.

21. Specifically, Ms. Justiniano complained that despite working over sixty hours per week, she had never received any additional wages.

22. She also noted that Defendants paid a male office-worker overtime wages

when he worked more than forty hours in a week.

23. Mr. Drummond claimed that the male coworker, who made approximately $28,000 in overtime wages the previous year, was being paid overtime because he held a Connecticut license.

24. Ms. Justiniano did not understand why that was relevant to his ability to collect overtime wages.

25. Ms. Justiniano noted that she had a young daughter at home and that all of this in-office overtime work was exhausting her and that her unequal and unlawful treatment was causing her significant stress.

26. Ms. Justiniano noted that a male co-worker had two support staff members, despite having a much lower workload, while Ms. Justiniano was doing all of her work by herself.  She complained that a male co-worker was given permission to work from home while she was not.  Finally, she also pointed out that the male "managers" were all provided with company cars while Ms. Justiniano was forced to use her personal vehicle and Mr. Drummond even used it for business purposes.

27. Mr. Drummond became extremely agitated and told Ms. Justiniano to "seek help," "worry about yourself," and "deal" with the fact that "wherever you go there are always going to be people who do more work than others."

28. Mr. Drummond threatened to "replace" Ms. Justiniano if she did not like the situation.

29. The following day, Ms. Justiniano visited her primary care physician who ordered that she not return to work until January 21, 2020.

30. Ms. Justiniano texted the doctor's note to Mr. Drummond who

immediately started refusing to accept or return her phone calls and started changing all of the company passwords including Ms. Justiniano's email password.

31. Ms. Justiniano used her work email for various personal reasons and, as such, she needed access to her emails.

32. Ms. Justiniano called Mr. Drummond several times to inquire what was going on but he refused to answer or respond to her calls.

33. On or about January 17, 2020 or January 20, 2020, Defendants sent a delivery person to Ms. Justiniano's home to deliver her an envelope.  Ms. Justiniano, who was home with her young daughter, did not recognize the person so she did not answer the door.

34. On January 21, 2020, Ms. Justiniano's doctor faxed a new note to Defendants ordering her to remain out of work until February 18, 2020.

35. Later that day, Defendants sent a second person to Ms. Justiniano's home who taped an envelope containing a letter to her door and mailed the letter, via certified mail, to Ms. Justiniano.

36. The letter informed Ms. Justiniano that the Defendants were terminating her.

37. The purported rationale for the termination was the "level of discontentment" and "dissatisfaction" Ms. Justiniano felt about her job as detailed during their January 6, 2020 meeting and Ms. Justiniano's "unprofessional" reaction to Defendants changing all of the company passwords

38. Mr. Drummond claimed that the passwords were changed solely so he could access the various sites and systems in Ms. Justiniano's absence.

39. This contention makes no sense since Defendants had access to the

existing passwords which were located on a list of passwords at the place of business. In fact, the passwords could not have been changed without utilizing the existing passwords.

40. Instead, Defendants changed the passwords to lock Ms. Justiniano out of the system to prepare for her termination.

41. Defendants invented a pretextual reason for terminating Ms. Justiniano.

42. The actual reason Defendants terminated Ms. Justiniano is because she is a woman and because she took protected conduct in furtherance of her rights.

43. The Defendants terminated Ms. Justiniano because she complained to Mr. Drummond about her entitlement to overtime wages and the fact that similarly-situated male employees were paid overtime wages, were given additional support staff, were allowed to work from home, and were given company cars.

44. Prior to Ms. Justiniano taking this protected conduct, the Defendants had no intention of terminating her.

45. Defendants deviated from their established discipline and termination policies when they terminated Ms. Justiniano without any prior warning or any prior negative performance review after sixteen years of exceptional performance.

46. Ms. Justiniano has lost various benefits since her termination including her health insurance, dental insurance, employer contributions into disability and unemployment, and the continued accrual of sick and vacation time.

47. Because of her termination, Ms. Justiniano's health has deteriorated and the stress and anxiety which caused her to see her doctor in the first place has severely worsened.

48. As a result of the Defendants' actions detailed herein, including the termination, Ms. Justiniano has suffered damages including loss of pay, loss of benefits,

emotional distress, and humiliation.

49. The actions by the Defendants as detailed herein were intentional, arbitrary, unreasonable, tortious, willful, wanton, reckless and in bad faith.

## COUNT I
### (RI Whistleblowers' Protection Act – R.I. Gen. Laws § 28-50-1, *et seq.*)

50. Ms. Justiniano repeats and realleges Paragraphs 1-49 as if set forth in full herein.

51. The Defendants terminated Ms. Justiniano because she reported the unlawful failure of the Defendants to pay her overtime wages and the fact that Defendants discriminated against her on the basis of gender by paying a similarly situated male employee overtime wages and providing similarly-situated male employees company cars, telework approval, and support staff.

52. The Defendant terminated Ms. Justiniano because she asserted, supported, reported, and participated in investigations and claim determinations of the unlawful failure to pay overtime wages.

53. The discrimination and failure to pay Ms. Justiniano overtime wages violated state and federal law including 29 U.S.C. §206(d), 29 U.S.C. § 207, and R.I. Gen Laws § 28-14-1, *et seq*.

54. Ms. Justiniano reasonably and in good faith believed the failure to pay overtime wages violated state and/or federal law.

55. As a result of the Defendants' retaliatory termination, Ms. Justiniano has suffered and continues to suffer damages.

## COUNT II
### (Rhode Island Wage Act (Retaliatory Termination) – R.I. Gen. Laws § 28-14-19.3)

56. Ms. Justiniano repeats and realleges Paragraphs 1-55 as if set forth in full herein.

57. The Defendants terminated Ms. Justiniano because she reported or was about to report the unlawful withholding of her wages and Defendants' discriminatory payment of wages to state and federal public bodies.

58. The Defendants terminated Ms. Justiniano because she reported Defendants' discriminatory payment of wages and the unlawful withholding of her wages to the Defendants.

59. The Defendants terminated Ms. Justiniano because she asserted, supported, reported, and participated in investigations and claim determinations of the unlawful and discriminatory withholding of her wages by state and federal bodies.

60. The withholding of Ms. Justiniano's overtime wages and discrimination violated state and federal law including 29 U.S.C. §206(d), 29 U.S.C. § 207, 42 U.S.C. § 2000e, R.I. Gen. Laws § 28-14-1, *et seq.*, R.I. Gen. Laws § 28-5-1, *et seq.*, and R.I. Gen. Laws § 42-112-1, *et seq.*

61. Ms. Justiniano reasonably and in good faith believed the withholding of her overtime wages violated state and/or federal law.

62. As a result of the Defendants' retaliatory termination, Ms. Justiniano has suffered and continues to suffer damages.

## COUNT III
### (Fair Labor Standards Act – Retaliatory Termination – 29 U.S.C. § 215(a)(3))

63. Ms. Justiniano repeats and realleges Paragraphs 1-62 as if set forth in full

9

herein.

64. The Defendants terminated Ms. Justiniano because she filed a complaint or instituted or caused to be instituted any proceeding related to the Fair Labor Standards Act, or was about to testify in any such proceeding.

65. As a result of the Defendants' retaliatory termination, Ms. Justiniano has suffered and continues to suffer damages.

## COUNT IV
### (Payment of Wages – R.I. Gen. Laws § 28-14-9.2)

66. Ms. Justiniano repeats and realleges Paragraphs 1-65 as if set forth in full herein.

67. Ms. Justiniano routinely worked well over forty hours per week while employed by the Defendants.

68. At no time has Ms. Justiniano ever received overtime pay as required by R.I. Gen. Laws § 28-12-4.1.

69. Ms. Justiniano does not qualify for any of the statutory exemptions contained in R.I. Gen. Laws § 28-12-4.3.

70. As a result of these actions undertaken by the Defendants, as described herein, Ms. Justiniano has suffered and continues to suffer damages.

## COUNT V
### (Fair Labor Standards Act – Overtime Wages – 29 U.S.C. § 207(a))

71. Ms. Justiniano repeats and realleges Paragraphs 1-70 as if set forth in full herein.

72. Phalanx is engaged in interstate commerce.

73. Specifically, Phalanx regularly deals with, purchases, and sells goods moving in interstate commerce and regularly utilizes the mails and other instrumentalities of interstate commerce.

74. Upon information and belief, Phalanx has annual gross revenues of more than $500,000.

75. At all relevant times, Mr. Drummond acted directly and indirectly in the interest of Phalanx in relation to Ms. Justiniano.

76. Mr. Drummond is the 100% owner of Phalanx, directs all employees, and is responsible for all issues related to the payment of wages for all employees. Specifically, it was his decision to refuse to pay Ms. Justiniano overtime wages.

77. While working for Defendants, Ms. Justiniano was regularly engaged in interstate commerce.

78. Specifically, Ms. Justiniano regularly utilized the mails and other instrumentalities of interstate commerce.

79. Ms. Justiniano routinely worked over forty hours per week with no additional compensation.

80. There is no exemption to the FLSA applicable to Ms. Justiniano or the Defendants.

81. As a result of these violations of law as described herein, Ms. Justiniano has suffered and continues to suffer damages.

## COUNT VI
### (Fair Labor Standards Act – Sex Discrimination – 29 U.S.C. § 206(d))

82. Ms. Justiniano repeats and realleges Paragraphs 1-81 as if set forth in full herein.

83. Phalanx is engaged in interstate commerce.

84. Specifically, Phalanx regularly deals with, purchases, and sells goods moving in interstate commerce and regularly utilizes the mails and other instrumentalities of interstate commerce.

85. Upon information and belief, Phalanx has annual gross revenues of more than $500,000.

86. At all relevant times, Mr. Drummond acted directly and indirectly in the interest of Phalanx in relation to Ms. Justiniano.

87. Mr. Drummond is the 100% owner of Phalanx, directs all employees, and is responsible for all issues related to the payment of wages for all employees. Specifically, it was his decision to refuse to pay Ms. Justiniano overtime wages and it was his decision to pay a similarly-situated male employee overtime wages.

88. While working for Defendants, Ms. Justiniano was regularly engaged in interstate commerce.

89. Specifically, Ms. Justiniano regularly utilized the mails and other instrumentalities of interstate commerce.

90. Ms. Justiniano routinely worked over forty hours per week with no additional compensation for work performed in excess of forty hours.

91. There is no exemption to the FLSA applicable to Ms. Justiniano or the Defendants.

92. Defendants paid Ms. Justiniano's similarly situated male co-worker overtime wages for hours worked above forty.

93. Defendants discriminated against Ms. Justiniano on the basis of sex and failed to pay Ms. Justiniano equal pay for equal work.

94. As a result of these violations of law as described herein, Ms. Justiniano has suffered and continues to suffer damages.

## COUNT VI
### (RI Civil Rights Act of 1990 – R.I. Gen. Laws § 42-112-2)
### (Against Phalanx Only)

95. Ms. Justiniano repeats and realleges Paragraphs 1-94 as if set forth in full herein.

96. Phalanx refused to pay Ms. Justiniano overtime wages despite paying a similarly situated male co-worker overtime wages.

97. Phalanx discriminated against and terminated Ms. Justiniano because of her gender.

98. As a result of these violations of law as described herein, Ms. Justiniano has suffered and continues to suffer damages.

WHEREFORE, Plaintiff Vanessa Justiniano prays for judgment against the Defendants including: an award of actual, compensatory, punitive, and liquidated damages in an amount to be set by the jury; attorneys' fees and costs; interest thereon; and such other and further relief as to the Court seems meet and just.

## JURY DEMAND

Plaintiff hereby demands a jury on all claims so triable.

VANESSA JUSTINIANO

By Her Attorney,

ENRIGHT LAW LLC

/s/ Thomas J. Enright
Thomas J. Enright (#7356)
696 Reservoir Avenue
Cranston, RI 02910
(401) 526-2620
(401) 457-7117  FAX
tom@enrightlawoffice.com

DATED:  April 24, 2020